**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Joshua Luger and Warrior Wash & Emporium, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America, United States Department of the Interior, and Doug Burgum, in his official capacity as Secretary of the U.S. Department of the Interior,<br><br>Defendants. | ) | **ORDER**<br><br>Case No.: 1:26-cv-00139 |

Before the court is a *Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Lack of Jurisdiction* brought by Defendants United States of America, United States Department of the Interior, and Doug Burgum, in his official capacity as Secretary of the U.S. Department of the Interior (collectively "Defendants") on July 6, 2026. (Doc. No. 13). Plaintiffs Joshua Luger and Warrior Wash & Emporium, LLC (collectively "Plaintiffs") filed a response in opposition on July 30, 2026, along with a *Motion for Hearing on the Motion to Dismiss*. (Doc. Nos. 24, 26). Defendants filed a reply on August 13, 2026. (Doc. No. 30).

## I. BACKGROUND

The following facts are taken from Plaintiffs' Complaint. The facts are presumed to be true for purposes of this Order.

Plaintiff Joshua Luger ("Luger") is an enrolled member of the Standing Rock Sioux Tribe, with a residence in the City of Bismarck, North Dakota. (Doc. No. 1 at 1). Plaintiff Warrior Wash & Emporium, LLC ("Warrior Wash"), is a limited liability company formed under the laws of the State of North Dakota; Luger is its sole member/owner. (*Id.*). Warrior Wash operates as a car wash

and convenience store on fee land within the City of Fort Yates, North Dakota, that is within the exterior boundaries of the Standing Rock Sioux Tribal Reservation. (*Id.*). As part of its convenience store, Warrior Wash sells industrial hemp products pursuant to the 2018 Federal Farm Bill and Title 43 of the Standing Rock Tribal Code. (*Id.* at 3).

On or about October 2023 through December 2023, BIA Officers Bad Hand and/or Spence began investigating Luger and/or Warrior Wash regarding the sale of industrial hemp. (*Id.* at 4). In late November or early December 2023, Warrior Wash placed a purchase with its wholesale supplier for industrial hemp products, which was received by December 21, 2023. (*Id.*). On or about the same day, BIA officers raided Warrior Wash and seized the industrial hemp products, which had an estimated value of approximately $29,778.98. (*Id.*). No illegal controlled substances were seized during this raid. (*Id.*).

After the seizure of the hemp products, Luger's business operations at Warrior Wash and other businesses he owned were disrupted, causing economic damage, including lost profit and productivity. (*Id.*). Further, upon learning of a criminal complaint in tribal court for alleged Criminal Sale of Drugs, in or about early February 2024, Luger hired legal counsel to defend this allegation, causing further economic damages, including, substantial attorney fees. (*Id.*).

On or about May 10, 2024, a special prosecutor provided Luger's counsel with a Motion for Dismissal of the single charge. (*Id.* at 5). The charge was dismissed based on lack of testing by BIA Officers Spence and/or Bad Band, and instead relied on independently tested samples provided by counsel, which concluded the product was industrial hemp product, as labeled and sold as, and due to the fact the BIA Officers failed to properly submit the alleged contraband for independent scientific testing despite the policy and protocol of the BIA Office of Justice Services,

which required it to do so. (*Id.*). On or about May 13, 2024, the special prosecutor instructed BIA Officer Spence to immediately return the product seized during the raid. (*Id.*).

The same day, Luger personally appeared at tribal court to recover the seized property and was directed to the law enforcement center, where he completed a request for return of property form. (*Id.*). A tribal prosecutor opposed the property's return to Luger, however, on or about May 14, 2024, Tribal Judge Swallow approved and signed an Order requiring the property be returned. (*Id.*). Additionally, Luger submitted a new return of property form with the signature of the special prosecutor that approved the return of the seized property. (*Id.*).

On approximately May 20, 2024, Luger attempted to recover his seized property, with no success. (*Id.*). He then returned to the BIA law enforcement center and spoke with a BIA employee, who indicated that Officers Spence and/or Bad Hand were not going to release the property to him in apparent disregard of the court and special prosecutor's instructions. (*Id.* at 6).

Luger filed a motion to return the seized property with the Tribal Court, and on June 10, 2024, Tribal Court Judge Swallow issued an Order of Dismissal on the basis the Tribal Court lacked jurisdiction over the federal government. (*Id.*). The industrial hemp product had a shelf-life of approximately six months. (*Id.*). The product has since become worthless, rendering it unsuitable for sale, and Luger incurred lost profits in the amount of approximately $100,000.00. (*Id.*). Since the 2024 charge, there have been no additional prosecutions brought and the BIA has not commenced forfeiture proceedings for the industrial hemp product. (*Id.*). As a result of defending the Tribal Court case, Luger incurred economic damages, including attorney fees, as well as non-economic damages, including emotional distress, humiliation, harm to reputation, worry, anxiety, and sleepless nights. (*Id.*). Damages also resulted from lost earnings through lost

productivity in Warrior Wash and in Luger's other businesses due to him having to defend this claim. (*Id.*).

On May 1, 2026, Plaintiffs filed a Complaint in this court. (Doc. No. 1). Therein, Plaintiffs alleged: (1) Malicious Prosecution; and (2) Abuse of Process. (*Id.* at 7-8). Plaintiffs further requested the court order Defendants to pay special damages, general compensatory damages, costs, disbursements, and reasonable attorney fees in both this and the Tribal Court actions, and any other relief the court may deem equitable and appropriate. (*Id.* at 9).

## II. LEGAL STANDARD

A motion to dismiss is governed by Federal Rules of Civil Procedure 12(b). Pursuant to Rule 12, a party must make a defense to a claim for relief before pleading if responsive pleading is permitted. Fed. R. Civ. P. 12(b). This includes motions to dismiss for lack of subject-matter jurisdiction, and for failure to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(1), (6). When deciding a Rule 12(b)(1) motion, the court must distinguish between a "facial attack" and a "factual attack." "If it is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." *Smith v. UnitedHealthGroup, Inc.*, 106 F.4th 809, 813 (8th Cir. 2024). The protections under Rule 12(b)(6) require the court to accept all facts alleged in the complaint as true and draw reasonable inferences in favor of the nonmovant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6 (internal citations omitted).

"To survive a rule 12(b)(6) motion, a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *FastTrac Transportation, LLC v. Pedigree Techs., LLC*, 618 F.Supp.3d 858, 863 (D.N.D. 2022) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on the motion, the court must accept the factual allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. *Bohan v. Honeywell Intern., Inc.*, 366 F.3d 606, 608 (8th Cir. 2004).

Matters outside the pleadings may not be considered by the court when deciding a Rule 12(b)(6) motion, but documents embraced by the complaint may be considered. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *see Enervations, Inc. v. Minnesota Mining & Mtg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment.

*Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. 2024)).

## III. DISCUSSION

Defendants argue they are entitled to dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or alternatively, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. No. 13). In support of their argument Defendants assert that this court lacks subject matter jurisdiction because Plaintiffs failed to present and exhaust administrative remedies, and Congress has not waived sovereign immunity for claims arising out of the detention of property by law enforcement officers.

**A. Subject Matter Jurisdiction**

The United States and its agencies are immune from suit unless it waives its sovereign immunity. If the United States does not waive, the federal court does not have subject-matter jurisdiction over claims brought against it. However, the Federal Tort Claims Act ("FTCA") permits a limited waiver when an individual is injured by federal employees acting within the scope of their employment. *Cheng v. Grenier*, No. 23-CV-0485 (WMW/DLM), 2024 WL 168627, at *5 (D. Minn. Jan. 16, 2024), *aff'd*, No. 24-1251, 2024 WL 3886675 (8th Cir. Aug. 21, 2024), *cert. denied*, 145 S. Ct. 993, 220 L.Ed.2d 367 (2024).

Prior to bringing a lawsuit in federal court under the FTCA, a claimant must first exhaust their administrative remedies.

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

A tort claim against the United States must be presented in writing to the appropriate federal agency within two years after the claim accrues, or unless action is begun within six months after the date of mailing a notice of final denial of the claim by the agency to which it was presented. 28 U.S.C. § 2401(b).

> (a) For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal Agency receives from a claimant, his duly authorized agent or legal representative, and an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of is authority to

> present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

**1. Exhaustion of Administrative Remedies and Proper Filing of an FTCA Claim**

As an initial matter, there is no requirement that a claimant is limited to only submitting a Standard Form 95 ("SF-95"). In fact, 28 C.F.R. § 14.2(a) specifically states that a claimant may use either an SF-95 or another written notification as long as it includes information on the incident, a claim for money damages in a sum certain, and evidence of authority to present the claim.

Plaintiffs did not fill out an SF-95, but completion of this form is not required. Instead, Plaintiffs argued that in-person conversations put the BIA on notice, and they correctly submitted a written notification, and in fact submitted multiple notifications. First, the court notes that any in-person conversation is insufficient. Writing, whether through an SF-95 or another written notification, is required. There is no exception or consideration of verbal conversations. The court also agrees with Defendants that Plaintiffs' May 13, 2024, Petition for Return of Property filed with the Tribal Court does not constitute an administrative tort claim. A review of Plaintiffs' Petition shows they were requesting the return of the industrial hemp product seized by BIA Law Enforcement. (Doc. No. 1-5). There is no indication from the Petition that Plaintiffs were pursuing either a malicious prosecution or abuse of process claim. (*Id.*).

As to the written notifications, Defendants point to three different communications they argued do not constitute proper filing: (1) a June 25, 2024, complaint filed with the Office of Inspector General at the U.S. Department of the Interior (Doc. No. 25-1); an email communication between counsel and the BIA, Internal Affairs Division from approximately June 25 through June

26 of 2024 (Doc. Nos. 25-2, 25-3); and (3) a July 16, 2024, letter submitted by T. Michael Andrews ("Andrews") to the Assistant Secretary of Indian Affairs. (Doc. No. 24 at 7-8).

The court first considers the June 25, 2024, complaint filed with the Officer of Inspector General. The court agrees with Defendants that this submission does not constitute an administrative tort claim. The only information provided to the court about this complaint was a "General Complaint" submission form. (*See* Doc. No. 25-1). No information has been provided as to what claims were in the complaint, the basis for any claims, what entity or entities the complaint was about, and what, if any, sum certain was being requested. Also notable are Plaintiffs' contentions that they were provided with a confirmation tracking number for the complaint, yet the court was not provided with evidence of the tracking number or whether it provided updates as to the receipt, review, and determination of the complaint.[1]

Other courts in this Circuit have considered documentation from the government as to the submission, or lack thereof, of administrative tort claims to the appropriate federal agency. As opined by the United States District Court for the District of Nebraska:

> What is more, the government has submitted a declaration from Kimberly Herbst, the manager of the Tort Program and Adjudication at the United States Postal Service National Tort Center in St. Louis. She declares that she did not discover any record of any administrative ort claims filed by or on behalf of [Plaintiff] after conducting a search of two separate databases. Absent any evidence to the contrary, the Court finds that [Plaintiff] has failed to exhaust his administrative remedies under the FTCA.

*Shekh v. United States Postal Serv.*, No. 8:25CV535, 2026 WL 63699, at *2 (D. Neb. Jan. 8, 2026) (internal citations omitted). The court made a similar ruling in *Izaguirre v. U.S. Department of Health & Human Services*:

[1] The court notes that Plaintiffs provided a copy of the submitted complaint confirmation, which includes a submission number. It is unclear as to whether Plaintiffs are referring to the submission number as the tracking number or whether a different number was provided.

> Here, there is no evidence in the Complaint or in the materials attached to it—such as a certified mail receipt and delivery confirmation—that [Plaintiff] actually sent his federal tort claim to the US HHS and that it was actually received by that agency. Furthermore, although there is a presumption that mail is delivered and received, that presumption can be rebutted by evidence of non-receipt. The US HHS has overcome any presumption by submitting the Declaration of Ms. Sicard showing that a search of records shows no claim from [Plaintiff] was received. [Plaintiff's] failure to respond to the Motion to Dismiss deprives him of the opportunity to dispute those facts.

No. 8:24CV417, 2025 WL 638305, at *5 (D. Neb. Feb. 27, 2025) (internal citations omitted); *see also King v. United States*, No. 8:24-CV-9, 2024 WL 1604032, at *2 (D. Neb. Apr. 12, 2024) ("While King never responded to the Motion to Dismiss, the United States provided an affidavit from a Manager of the Tort Program and Adjudication with the United States Postal Service National Tort Center, Kimberly Herbst. Filing 9-1. Ms. Herbst declared that she searched the applicable databases for administrative claims filed by plaintiff King and discovered that no such claims had been filed.").

Similarly, here the Defendants provided a declaration of Rebecca Pock, a Paralegal Specialist with the United States Department of the Interior, in the Office of the Solicitor, Division of General Law, Torts Practice Branch. (Doc. No. 16). Therein, Ms. Pock declared that after the filing of the first suit in the District of North Dakota in *Luger et al v. United States et al* (Case No. 1:25-cv-193), on September 15, 2025, she personally conducted a search of the Torts Practice Branch's electronic matter tracking system and email intake system to determine whether any FTCA claims were received from Plaintiffs. (*Id.* at 1-2). In addition, Ms. Pock conducted several other searches of components where administrative FTCA claims may be received to determine whether another division received the claim but had not forwarded it on to the Torts Practice

Branch.[2] (*Id.* at 2). Ms. Pock determined after her search that the United States Department of the Interior did not have any administrative claims under the FTCA submitted by either Plaintiff. (*Id.*).

The court next considers the email communications between counsel and the BIA, Internal Affairs Division. On June 25, 2024, counsel sent the BIA, Internal Affairs Division an email requesting Plaintiffs' allegations be investigated and followed up on, and a full investigation occur as to BIA Officers Spence and Bad Hand. (Doc. No. 25-2 at 1-2). On June 26, 2024, a representative of the Internal Affairs Division responded to the email. (Doc. No. 25-3 at 1). Therein, the representative informed counsel that the Internal Affairs Division only investigates allegations of employee misconduct of Tribal Police Departments and BIA Law Enforcement employees, and that the instant matter is judicial in nature due to the search warrant being issued by the court and executed by law enforcement personnel. (*Id.*). Further, the representative advised that the Internal Affairs Division does not have authority over judicial processes and the complaint should be addressed by the local court so it may determine whether there was any mishandling of evidence. (*Id.*). Plaintiffs take the submitted email and the response as the filing of the complaint and subsequent denial, noting that the representative directed them to contact the court and represented that the BIA would not handle the matter. (Doc. No. 24 at 14, 19) ("Acting Chief Deputy Rodriguez's response indicated that the BIA had received the complaint and had sufficient information to determine whether the claim was realistic or settleable. The response implies that the BIA did not find the issue settleable and directed Mr. Luger to file with the courts.").

---

[2] Ms. Pock's searches included the electronic data tracking system maintained by the Division of General Law within the Solicitor's Office, the mail log maintained by administrators in the Office of the Secretary of the Department of the Interior, and requested the safety office for the Bureau of Indian Affairs, Great Plains Region, which provides service to the Standing Rock Agency of the BIA, to conduct a search to determine whether it had received an administrative tort claim. (Doc. No. 16 at 2). Each search found that no administrative tort claim had been received by Plaintiffs. (*Id.*).

The court disagrees with Plaintiffs' interpretation of the email correspondence. The response email specifically requests allegations of employee misconduct of Tribal Police Departments and BIA Law Enforcement employees, to include the dates, times, and names of the officers, and witnesses to the allegations so that they "may review and complete the intake of [Plaintiffs'] complaint." (Doc. No. 25-3 at 1). Based on this sentence alone, it is clear that the Bureau of Indian Affairs did not consider the June 25, 2024, email to be a completed complaint, and requested additional, specific information prior to reviewing and completing intake of the complaint. (*Id.*). Moreover, while it is true that the representative's email did state that Plaintiffs should contact the local courts, this was in specific reference to the search warrant, which the Internal Affairs Division noted was a judicial issue rather than an issue they investigate. There is no mention of the Internal Affairs Division denying the complaint or directing that the entire matter be submitted to the court. Rather, the email specifically asked for more information as to the allegations against the officers and directed that the search warrant was an issue for the courts.

There is no indication from the record that counsel for Plaintiffs ever replied to the message or provided further information. It is this court's opinion that Plaintiffs erroneously assumed the email response was a denial and failed to provide the additional, more clarifying information requested. Based on this failure, the court cannot conclude that Plaintiffs properly filed a complaint, as supported by the Internal Affair Division representative's response requesting information about the allegations prior to the review and completion of intake of the complaint.

Finally, the court turns its attention to the July 16, 2024, letter, written by Andrews and addressed to the United States Department of Interior, Office of the Assistant Secretary for Indian Affairs. (Doc. No. 1-1). The letter does not constitute an administrative tort claim for malicious prosecution or abuse of process.

The July 16, 2024, letter requested investigation and action on a matter involving BIA officers within the Standing Rock Sioux Tribe in Fort Yates, North Dakota. Andrews summarized the instant issue, the BIA's seizure of the hemp product with a calculated value of approximately $29,778.98, and the BIA's failure to properly test the product or appropriately dispose of the product as required by the Federal Rules of Evidence and applicable laws and regulations. At most, Andrews alleged that the BIA's failure to return the seized property as directed by a May 14, 2024, Tribal Order, constituted "willful and contemptuous behavior" and an unlawful "taking." This is not enough to allege a malicious prosecution or abuse of process claim. Plaintiffs specifically sought monetary compensation for the seized product due to the expiration of its shelf life instead of claims for abuse of process and malicious prosecution.

At the letter's conclusion, Andrews requested that he be contacted to discuss the matter further and that Plaintiffs be paid the $29,778.98 for seized product. Finally, Andrews warned that if no response was received by July 31, 2024, Plaintiffs would "exercise all legal and equitable rights available to him under the law, including filing of a lawsuit for both injunctive and monetary relief against the Department, the known individual law enforcement officers, and possible others."

Even if the court were to construe the letter as an administrative tort claim, the claim would still fail. Statute provides that the federal agency has six months to make a final disposition of a claim, or if no disposition is made within the six months, shall be treated as a denial. 28 U.S.C. § 2675(a). Andrews dated the letter on July 16, 2024, and only gave the United States Department of the Interior until July 31, 2024, to respond. (*See* Doc. No. 1-1 at 1, 3). This is nowhere near the six-month window. Finally, the threat of future legal action does not satisfy the administrative exhaustion requirement as the letter fails to provide notice of the specific allegations (namely, abuse of process and malicious prosecution).

### 2. Evidence of Authority Requirement

To be considered a properly presented claim, there must be evidence of a representative's authority to act on behalf of the claim beneficiaries under state law. *Mader v. United States*, 654 F.3d 794, 804 (8th Cir. 2011).[3] Such a requirement is far from burdensome, as evidence of one's authority to present an FTCA claim is "uniquely in the representative's possession." *Id.* Compliance with this requirement is a jurisdictional precondition to filing an FTCA suit in federal court, and evidence of authority must be asserted contemporaneously with the filing of the claim. *Id.* at 805; *Puetz v. United States*, No. 22CV02870SRNDTS, 2023 WL 4186574, at *7 (D. Minn. June 26, 2023), *aff'd*, No. 23-2710, 2024 WL 1739442 (8th Cir. 2024).

While the Eighth Circuit in *Mader* did not consider the evidence of authority requirement in the context of an attorney-client relationship, its holding was not limited to a particular type of representative or legal theory. *See Puetz v. United States*, 2023 WL 4186574, at *6. Other courts in this Circuit have since construed the evidence of authority requirement to include those submitted by an attorney. *Id.* at *7 (collecting cases). As opined by the court in the District of Minnesota,

> The plain language of 28 C.F.R. § 14.2(a) addresses a number of relationships to the claim's beneficiary – "agent, executor, administrator, parent, guardian" – before finishing with the broad "other representative." The function of this catchall phrase is to emphasize that anyone other than the beneficiary attempting to submit a claim must produce evidence of their authority.

*Id.* (internal citations omitted).

[3] Plaintiffs argue that while it has been over 15 years since *Mader* was decided, no court has determined what compliance with the authority requirement of presentment looks like in the attorney-client relationship context and requiring proof of authority will only prolong litigation. (*See* Doc. No. 24 at 21-22). Moreover, Plaintiffs argue that almost every Circuit has rejected a requirement that attorneys provide proof of authority to act on behalf of their client. (*Id.* at 22). Notably, the Eighth Circuit, which is binding precedent on this court, has not made such a determination. This court can, and shall, continue to rely on the Eighth Circuit's analysis in *Mader* when determining whether the evidence of authority requirement has been met. Finally, to the extent Plaintiffs also argue that the evidence of authority requirement is not mandatory, the Eighth Circuit has adopted the interpretation of 28 C.F.R. § 14.2(a), which requires the accompaniment of evidence of authority when presenting a claim. *See Mader*, 654 F.3d at 804.

This evidence of authority requirement cannot be met by an attorney self-identifying as the claimant's attorney, a signature on the submitted form, a cover letter, or email including an attorney's title and information about their firm. *Johns v. United States*, No. 24-CV-01892 (JMB/LIB), 2025 WL 713361, at *6 (D. Minn. Mar. 5, 2025), *appeal dismissed*, No. 25-1685, 2025 WL 2977263 (8th Cir. 2025). Such submissions without the inclusion of authorization from the claimant for an attorney to act on their behalf is insufficient to satisfy the requirement. *Id.*; *see Puetz*, 2023 WL 4186574, at *8 ("Although [the attorney's] email conspicuously includes his title and information about his firm, such that the VA would reasonably understand that he is an attorney, it omits an authorization from [Plaintiff] to act on his behalf.").

Courts in the District of South Dakota have taken a different approach than those in the District of Minnesota. In *Sleighter*, the court determined that South Dakota law recognizes both a presumption of authority for an attorney to appear on behalf of his client, and that an attorney is expressly authorized to commence actions on behalf of their client. *Sleighter v. United States*, No. 5:24-CV-05014-RAL, 2025 WL 238880, at *5 (D.S.D. Jan. 17, 2025). Based on this presumption, attorneys need only make some minimal showing that they are acting as a claimant's attorney. *Id.* Such a showing may be made by submitting a letter that includes the name of the law firm, the law firm's letterhead, and mailing address. *Id.*

This district court has had limited opportunity to analyze the evidence of authority requirement in an attorney-client context. In *Wilkie*, the court determined that while a retainer agreement was attached to the SF-95, it was insufficient to evidence Plaintiff's authority to act on behalf of the Estate as there was no showing that Plaintiff had been appointed personal representative of the Estate under either state law or tribal law. *Wilkie v. United States*, No. 1:25-

CV-221, 2026 WL 1196713, at *4 (D.N.D. Feb. 23, 2026).[4] Similarly, in *Trottier*, the court determined that the plaintiffs provided no evidence of their authority to bring a claim on behalf of their daughter, as under state law, proof of court-appointed guardianship is required for minors' rights to be enforced by civil actions. *Trottier v. United States*, No. 3:21-CV-93, 2021 WL 5237287, at *3 (D.N.D. Nov. 10, 2021). Finally, in *Hennager*, the court determined that although the plaintiff submitted evidence of his authority to bring a claim on behalf of a minor after the filing of the federal suit, evidence of authority must be asserted contemporaneously with the filing of the claim. *Id.* at 5. Because the plaintiff did not accompany the administrative claim with evidence of his authority to bring the claim on behalf of the minor until after the suit was filed in federal court, he failed to meet the jurisdictional prerequisite to file suit under the FTCA in federal court. *Id.* at 4-5.

None of these cases specifically addressed the attorney-client relationship when determining whether the evidence of authority requirement was met. While this court in *Wilkie* noted that the plaintiff filed an SF-95 that listed her as personal representative of the Estate and included a copy of the retainer agreement, there were no other documents showing she had authority to bring a claim on behalf of the Estate. *See Wilkie*, 2026 WL 1196713, at 1-2. Moreover, the court's focus was on Plaintiff's failure to provide evidence of her authority to bring a claim on behalf of the Estate, not on the attorney-client relationship or the attorney's authority to bring a claim on behalf of the plaintiff. *Id.*

The instant matter presents a substantially different set of facts. Here, there is no executor or personal representative of an estate or an individual attempting to act as guardian or other

[4] This matter is presently on appeal to the Eighth Circuit Court of Appeals.

representative. Instead, this case focuses on the attorney-client relationship and whether there is sufficient evidence to meet the evidence of authority requirement.

First, to the extent Plaintiffs assert Defendants applied an incorrect legal standard by considering *Mader*, past court precedent shows otherwise. Numerous courts within the Eighth Circuit have addressed the divide in authority caused by *Lunsford v. United States*, 570 F.2d 221 (8th Cir. 1977), which required a representative to submit evidence of authority to act for an FTCA plaintiff, and *Farmers State Sav. Bank v. Farmers Home Admin.*, 866 F.2d 276 (8th Cir. 1989), which established a two-part test to satisfy the presentment requirement. In so doing, courts determined that the Eighth Circuit's *en banc* opinion in *Mader* directly addressed and resolved the divide in authority. *See generally Runs After v. United States*, No. CIV 10-3019-RAL, 2012 WL 2951556, at *4 (D.S.D. July 19, 2012), *aff'd sub nom. After v. United States*, 551 F. App'x 596 (8th Cir. 2013).

While cognizant of the differing views taken by the Districts of South Dakota and Minnesota, the court is most persuaded by the District of Minnesota, whose findings are most in line with the Eighth Circuit's holding in *Mader.* As previously acknowledged by this court, *Mader* did not consider the attorney-client relationship. However, the Eighth Circuit was clear that its holding was not limited to any particular type of representative or to any specific legal theory and the plain language of 28 C.F.R. § 14.2(a) includes "other representatives." Such a phrase would include anyone beyond the individual for which the claim is filed, including legal representatives.

Cognizant of the fact that requiring retained counsel to provide evidence of their authority to act on behalf of a claimant is, at best, odd, the court also acknowledges that given the broad scope of 28 C.F.R. § 14.2(a), even counsel must meet the evidence of authority requirement.

Adopting the approach taken by the District of Minnesota, there is insufficient evidence of counsel's authority to bring a claim on Plaintiffs' behalf.

As previously noted, the court does not have enough information to determine what was submitted in the complaint filed with the Office of Inspector General at the U.S. Department of the Interior and so cannot determine whether the evidence of authority requirement was met. As to the emailed communication exchange, at the outset, counsel noted that they are an attorney representing Plaintiffs. Moreover, the email exchange included counsel's signature block, containing the name of the law firm, the firm's address, and associated phone numbers. However, under *Mader* this is not enough. *Mader* and subsequent cases interpreting *Mader* require counsel to show their authority to act on behalf of the claimant, whether through the submission of a signed retainer agreement, authorization form, or otherwise. *See Puetz,* 2023 WL 4186574, at *8. Without this documentation, the evidence of authority requirement is not met. Finally, as to Andrews' July 16, 2024, letter, while it was written with the company's letterhead and Andrews noted at the outset that he represented Warrior Wash and Luger, Andrews similarly did not include evidence of an authorization form. While Andrews included in his email to the Office of Justice Services that he was a former Assistant United States Attorney, the byline of his email specified his place of employment as "McGuireWoods Consulting," which does not clarify his representative capacity. (*See* Doc. No. 15-1 at 2). This likewise fails to provide evidence of authority.

Because Plaintiffs did not properly present or exhaust their administrative claims for malicious prosecution and abuse of process, as articulated above, this court lacks subject matter jurisdiction and need not address the remaining presentment and exhaustion issues raised by the parties.

**B. Sovereign Immunity**

In the alternative, Defendants argue that Plaintiffs failed to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). Defendants specifically point to one of the exceptions to the FTCA's waiver of sovereign immunity, involving the detention of goods by law enforcement officers.

> (c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by an any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if –
>
> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited; (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28. U.S.C. § 2680(c). Plaintiffs oppose such an argument on the basis that Defendants ignore another relevant section of 28 U.S.C. § 2680 termed as the intentional-tort exception. Within this exception is the "law enforcement proviso" which operates as an exception to the exception and permits claimants to file claims arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution against investigative or law enforcement officers.[5] 28 U.S.C. 2680(h). The United States Supreme Court has further clarified that this proviso extends to acts or omissions of investigative or law enforcement officers that arise within the scope of their employment, regardless of whether the officers were engaged in investigatory or law enforcement

---

[5] The statute defines investigative or law enforcement officers as any Officer of the United States with authority by law to execute searches, seize evidence, or to make arrest for violations of Federal law. 28 U.S.C. § 2680(h).

activity, or whether they were executing a search, seizing evidence, or making an arrest. *Millbrook v. United States*, 569 U.S. 50, 57 (2013).

The court agrees with Plaintiffs that the claims for malicious prosecution and abuse of process by law enforcement officers fall under the exception to the exception and the law enforcement proviso applies. This does not end the court's analysis, however. Numerous courts have addressed whether the law enforcement proviso applies to each of the exceptions or modifies only the exception within that specific subsection. The United States Supreme Court has found that the plain language of the statute permits the exception only to claims within that specific subsection. Moreover, the Defendants are also correct in considering the "detention of goods" exception. The United States Supreme Court has also addressed how to assess and reconcile multiple FTCA exceptions. *See generally Martin v. United States*, 605 U.S. 395 (2025). As aptly put by the Fifth Circuit:

> The Supreme Court explained how courts must assess and reconcile two FTCA exceptions. First, courts assess the intentional-tort exception, so that "if a plaintiff alleges that a federal law enforcement officer committed one or more of [the] six torts [in the law-enforcement proviso], the proviso will ensure those claims survive an encounter with the intentional-tort exception." Second, courts consider whether another exception precludes any of the plaintiffs' claims. Even intentional-tort claims can be barred by a different exception.

*Allyn-Feuer v. Doe*, No. 25-40204, 2026 WL 1269833, at *2 (5th Cir. May 8, 2026) (internal citations omitted; brackets in original). In *Allyn-Feuer*, the Fifth Circuit concluded that because Plaintiff alleged claims of false imprisonment, assault, and battery by law enforcement officers, the claims survived the intentional-tort exception through the law enforcement proviso. *Id.* However, the court also considered whether the claims were barred by another exception, the customs-duty exception,[6] and determined that because Plaintiff's claims arose out of the detention

[6] The customs-duty exception and the detention of goods exception both arise under 28 U.S.C. § 2680(c).

of goods, Plaintiff's vehicle, the customs-duty exception applied, and sovereign immunity was not waived. *Id.* at 3. The Fifth Circuit has also determined that even in situations where intentional torts were committed by law enforcement officers, the officers are exempt from suit under the FTCA when the torts were committed during circumstances warranting a detention of goods exception. *Davila v. United States*, 713 F.3d 248, 256 (5th Cir. 2013).

The court reaches the same conclusion here. As opined previously, Plaintiffs' claims would survive the intentional tort exception through the law enforcement proviso. However, the claims are barred pursuant to the "detention of goods" exception. Other courts have found that when determining if this section applies, the inquiry focuses on the timing of whether the detention of goods ceased prior to the alleged injury. *See Mai v. United States*, No. PE:26-CV-0002-DC-DF, 2026 WL 2364562, at *3 (W.D. Tex. July 15, 2026), *report and recommendation adopted sub nom. Mai v. United States*, No. P:26-CV-00002-DC, 2026 WL 2211240 (W.D. Tex. July 31, 2026). The Eighth Circuit has ruled similarly in the past. *See Cheney v. United States*, 972 F.2d 247, 248 (8th Cir. 1992) ("[Plaintiff's] claim is based on the agent's action in returning the title certificate to [a third-party], which resulted from the original detention of the certificate. Thus, [Plaintiff's] claim falls within section 2680(c)'s broad exception to the FTCA's general waiver of sovereign immunity in cases arising out of the detention of property by law enforcement officers."); *Kosak v. United States*, 465 U.S. 848, 854 (1984) (concluding that the phrase "any claim arising in respect of" detention of goods means any claim "arising out of" the detention of goods).

The court is further persuaded by the interpretation of section 2680(c) as opined by the Ninth Circuit. In *DaVinci Aircraft, Inc.*, the Ninth Circuit recognized the United States Supreme Court's holding in *Kosak* that the statutory language of section 2680(c) is to be interpreted to encompass all injuries associated with the detention of goods. *DaVinci Aircraft, Inc., v. United*

*States*, 926 F.3d 1117, 1124 (9th Cir. 2019). Similarly, the Ninth Circuit acknowledged that while some courts have interpreted section 2680(c) to bar only suits arising out of the temporary withholding or custody of goods, it construes the statute as an effective bar to any remedy for intentional torts with respect to seizures. *Id.* Meaning, seizures are covered by the detention exception. *Id.*

While Plaintiffs' claims survive the law enforcement proviso, the claims are barred under the detention of goods exception. Plaintiffs allege malicious prosecution and abuse of process. Both claims arise from law enforcement's search, eventual seizure, and detention of industrial hemp product, which remains in law enforcement custody. The industrial hemp product was seized pursuant to an investigation by BIA officers, who, pursuant to a search warrant, seized the hemp product and retained it as part of its investigation into Plaintiffs. *See Foster v. United States*, 522 F.3d 1071, 1076-77 (9th Cir. 2008) ("Plaintiff's property was seized pursuant to valid warrants; he was not convicted of any relevant crimes; the government sought, but did not obtain, civil forfeiture; and Plaintiff filed an action for negligence 'arising from' the detention of the property."). Because Plaintiffs' claims arise out of the detention of his property and no independent or intervening events occurred, the detention of goods exception bars Plaintiffs' claims.

Plaintiffs also argue Defendants are liable for the alleged damage to their property, as the hemp product had a shelf life of approximately six months, resulting in loss of potential income. The Civil Asset Forfeiture Reform Act ("CAFRA") added paragraphs (1)-(4) to 28 U.S.C. § 2680(c). *Foster v. United States*, 522 F.3d 1071, 1074-75 (9th Cir. 2008). These paragraphs provide for a re-waiver of sovereign immunity when property is damaged while in the possession of the government, including law enforcement officers, when the property was seized for the purpose of forfeiture, the claimant's interest was not forfeited, remitted or mitigated, and the claimant was not

convicted of a crime for which the property was subject to forfeiture. *Id.* In *Foster*, the Ninth Circuit concluded that under the CAFRA, section 2680(c)(1)-(4)'s re-waiver of sovereign immunity specifically applies only to property seized for the sole purpose of forfeiture. *Id.* at 1075, 1079 (similarly finding that even if the government had the possibility of a forfeiture in mind when seizing property does not detract from the application of the detention of goods exception when the initial seizure occurred pursuant to a legitimate criminal investigation).

There is no indication from Plaintiffs' Complaint that Defendants seized the property for the sole purpose of forfeiture. Instead, the property was seized during a law enforcement raid pursuant to a search warrant. Because the property was seized with a legitimate purpose of a criminal investigation, the re-waiver under CARFA is inapplicable. Even if at the time of the seizure law enforcement had the possibility of forfeiture in mind, the re-waiver still would not apply, whereas here the property was taken in connection with a criminal investigation.

Even if Plaintiffs had properly brought and exhausted their administrative remedies, the claims are barred under 28 U.S.C. § 2680 and Defendants' sovereign immunity is not waived.

## IV. CONCLUSION

For the reasons articulated above, Defendants' *Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Lack of Jurisdiction* (Doc. No. 13) is **GRANTED**, Plaintiffs' *Motion for Hearing on the Motion to Dismiss* (Doc. No. 26) is deemed **MOOT**, and this matter is **DISMISSED** in its entirety without prejudice.

**IT IS SO ORDERED.**

Dated this 29th day of September, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court